01

02

03

04

05

06

07                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
08                                  AT SEATTLE

09  JOSH ROBERT BAILEY,                    )    CASE NO. C12-1780-RSM-MAT
                                           )
10          Plaintiff,                     )
                                           )
11          v.                             )    REPORT AND RECOMMENDATION
                                           )    RE: SOCIAL SECURITY DISABILITY
12  CAROLYN W. COLVIN, Acting              )    APPEAL
    Commissioner of Social Security,[1]    )
13                                         )
            Defendant.                     )
14  _____       )

15          Plaintiff Josh Robert Bailey proceeds through counsel in his appeal of a final decision of

16  the Commissioner of the Social Security Administration (Commissioner).   The Commissioner

17  denied plaintiff's applications for Supplemental Security Income (SSI) and Disability

18  Insurance Benefits (DIB) after a hearing before an Administrative Law Judge (ALJ).   Having

19  considered the ALJ's decision, the administrative record (AR), and all memoranda of record,

20  the Court recommends that this matter be REMANDED for further administrative proceedings.

21  _____

22          1 Carolyn W. Colvin, Acting Commissioner of Social Security, is substituted as defendant in
    this suit.   Fed. R. Civ. P. 25(d)(1).

REPORT AND RECOMMENDATION
PAGE -1

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1974.[2]  He completed high school, attended two years of college, and participated in vocational training.  (AR 172.)  Plaintiff previously worked as a gatekeeper to a development team, a teacher's assistant, in retail, and as a food preparer.  (AR 41-44, 168.)

Plaintiff filed applications for SSI and DIB in April 2009, alleging disability beginning April 29, 2009 due to short and long term memory problems, bipolar disorder, and anxiety.  (AR 64-65, 139-50.)  His applications were denied initially and on reconsideration, and he timely requested a hearing.

On March 1, 2011, ALJ Verrell Dethloff held a hearing, taking testimony from plaintiff and his father.  (AR 38-63.)  On April 5, 2011, the ALJ rendered a decision finding plaintiff not disabled.  (AR 17-33.)

Plaintiff timely appealed.  The Appeals Council denied plaintiff's request for review on August 23, 2012 (AR 1-3), making the ALJ's decision the final decision of the Commissioner.  Plaintiff appealed this final decision of the Commissioner to this Court.

**JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

**DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it

---

2 Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
PAGE -2

01    must be determined whether the claimant is gainfully employed.   The ALJ found plaintiff had

02    not engaged in substantial gainful activity since April 29, 2009, the alleged onset date.

03          At step two, it must be determined whether a claimant suffers from a severe impairment.

04    The ALJ found plaintiff's affective disorder and anxiety disorder severe.   He noted plaintiff's

05    bipolar disorder had stabilized with medication and found his lower back pain and right hand

06    tremor not severe.   Step three asks whether a claimant's impairments meet or equal a listed

07    impairment.   The ALJ found plaintiff's impairments did not meet or equal the criteria of a

08    listed impairment.

09          If a claimant's impairments do not meet or equal a listing, the Commissioner must

10    assess residual functional capacity (RFC) and determine at step four whether the claimant has

11    demonstrated an inability to perform past relevant work.   The ALJ found plaintiff had the RFC

12    to perform a full range of work at all exertional levels, but with the following nonexertional

13    limitations:   he can perform simple, repetitive tasks, is capable of basic, work related social

14    limitations with supervisors, co-workers, and the public, can adjust to simple variations in

15    routine, avoid hazards, travel to and from the workplace, and carry out goals and plans set by

16    others.   With that RFC, the ALJ found plaintiff unable to perform any past relevant work.

17          If a claimant demonstrates an inability to perform past relevant work or has no past

18    relevant work, the burden shifts to the Commissioner to demonstrate at step five that the

19    claimant retains the capacity to make an adjustment to work that exists in significant levels in

20    the national economy.   With consideration of the Medical-Vocational Guidelines, the ALJ

21    concluded jobs existed in significant numbers in the national economy plaintiff could perform.

22    The ALJ, therefore, concluded plaintiff was not under a disability at any time from the

01 application date through the date of the decision.

02      This Court's review of the ALJ's decision is limited to whether the decision is in

03 accordance with the law and the findings supported by substantial evidence in the record as a

04 whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means

05 more than a scintilla, but less than a preponderance; it means such relevant evidence as a

06 reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881

07 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which

08 supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278

09 F.3d 947, 954 (9th Cir. 2002).

10      Plaintiff argues the ALJ erred in his assessment of the medical opinions, the opinion of

11 an employment specialist, the lay testimony of his parents, and his credibility. Plaintiff also

12 argues the ALJ erred in relying on the Medical-Vocational Guidelines despite the existence of

13 significant nonexertional limitations. He requests remand for an award of benefits or, in the

14 alternative, for further administrative proceedings. The Commissioner argues the ALJ's

15 decision is supported by substantial evidence and should be affirmed.

16 <u>Medical Opinions</u>

17      In general, more weight should be given to the opinion of a treating physician than to a

18 non-treating physician, and more weight to the opinion of an examining physician than to a

19 non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). An ALJ must

20 provide clear and convincing reasons for rejecting uncontradicted opinion evidence, and

21 specific and legitimate reasons for rejecting contradicted opinion evidence. *Id*. While the

22 opinions of a nonexamining physician cannot alone serve to reject the opinions of treating or

01  examining physicians, *id*. at 831, such evidence need not be discounted when not contradicted

02  by all other evidence in the record, *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.1995).

03       Plaintiff argues the ALJ erred in rejecting the opinions of treating physician Dr. Brian

04  Vath, and examining physicians Drs. Kristoffer Rhoads and Mary Anderson.   He also argues

05  the ALJ erred in failing to account for and/or reject one portion of the opinions of reviewing

06  physicians Drs. Edward Beaty and Rita Flanagan.   Because the opinions of the treating and

07  examining physicians were contradicted by the opinions of Drs. Beaty and Flanagan, the ALJ

08  was required to provide specific and legitimate reasons for their rejection.

09  A.    Dr. Brian Vath

10       The ALJ gave "little weight" to the opinions of Dr. Vath, "who concluded that the

11  claimant has marked limitations in understanding and memory and in the ability to maintain

12  attention and concentration for extended periods." (AR 27 (citing AR 268-70).)   He explained:

13       Dr. Vath also seems to conclude that the claimant cannot work due to his
         impairments.   [(AR 266-67.)]   Although treating physician opinions are

14       usually afforded more weight, Dr. Vath does not provide a completed evaluation
         with objective findings to support his opinion.   To the contrary, his progress

15       notes contain little to no evidence of any significant mental limitation.
         Moreover, Dr. Vath's opinion is not consistent with the objective findings of Dr.

16       Anderson or with the claimant's demonstrated abilities in his volunteer work[.]

17  (AR 27-28.)

18       1.    Asperger's Disorder:

19       Plaintiff first argues the ALJ erred in relation to Dr. Vath's diagnosis of Asperger's

20  disorder, failing to evaluate that condition at step two and to apply the special psychiatric

21  review technique, and failing to consider the condition at step three and beyond.   This

22  argument stems from the following observation in Dr. Vath's April 5, 2010 opinion letter:

REPORT AND RECOMMENDATION
PAGE -5

01      I also believe he has personality problems that are most consistent with
        Asperger's disorder.  He has difficulty with emotional reciprocity, meaning
02      that he has a difficult time reading others emotions and responding in-kind.  He
        may read things as aggressive or judgmental when they are not.  He also has
03      difficulty forming relationships with others.

04  (AR 266 (also stating plaintiff's "work history has been impacted by both his mood cycles and

05  his persistent memory and relational problems."))

06          The Commissioner argues the ALJ's failure to consider Asperger's disorder was

07  harmless.  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (error may be deemed

08  harmless where it is "'inconsequential to the ultimate nondisability determination.'") (cited

09  sources omitted).     She notes the ALJ properly considered all of the limitations assessed by Dr.

10  Vath, *see* Social Security Ruling (SSR) 96-8p (ALJ must consider limitations imposed by all

11  impairments, including those that are not severe), and considered Dr. Vath's treatment notes

12  and opinion in assessing plaintiff's RFC.   The Commissioner also asserts that, regardless of

13  the mental impairments addressed, the ALJ properly applied the special technique and step

14  three analysis.   She notes all three mental impairments in question require diagnostic criteria of

15  impairment and either two marked limitations in functional areas or one marked limitation

16  coupled with repeated episodes of decompensation.   20 C.F.R. pt. 404, subpt. P., app. 1, §§

17  12.04 (affective disorders), 12.06 (anxiety disorders), and 12.10 (autistic and other pervasive

18  developmental disorders).

19          At step two, a claimant must make a threshold showing that a medically determinable

20  impairment significantly limits his ability to perform basic work activities.   *See Bowen v.*

21  *Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c).   "Basic work

22  activities" refers to "the abilities and aptitudes necessary to do most jobs."   20 C.F.R. §§

REPORT AND RECOMMENDATION
PAGE -6

404.1521(b), 416.921(b).  "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *See Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996 (quoting SSR 85-28).  "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims."  *Id.* (citing *Bowen*, 482 U.S. at 153-54).  An ALJ is also required to consider the "combined effect" of an individual's impairments in considering severity.  *Id.*

The Commissioner appears to concede that the ALJ should have identified Asperger's disorder as a severe impairment at step two and, considering both Dr. Vath's opinion and the record as a whole, that concession appears reasonable.  However, the Commissioner does not provide support for the conclusion that the failure to address the condition was harmless.  The mere fact that the ALJ identified and analyzed other severe mental impairments at steps two and three does not render the omission of a separate severe mental impairment harmless.  In fact, the Ninth Circuit has found otherwise in similar circumstances.  *See Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012) ("Because the ALJ excluded panic disorder from Hill's list of impairments and instead characterized her diagnosis as anxiety alone, the [RFC] determination was incomplete, flawed, and not supported by substantial evidence in the record.")[3]  Also,

---

3 The decision in *Burch v. Barnhart*, 400 F.3d 676 (9th Cir. 2005), cited by the Commissioner, is inapposite.  In that case, the Ninth Circuit concluded an ALJ's failure to consider a claimant's obesity at step two was harmless given that "it could have only prejudiced Burch in step three (listing impairment determination) or step five (RFC) because the other steps, including this one, were resolved in her favor."  *Id.* at 682.  "As obesity is not a separately listed impairment, a claimant will be deemed to meet the requirements if 'there is an impairment that, in combination with obesity, meets the requirements of a listing.'" *Id.* (quoting SSR 02-01p).  The Court's decision rested on the claimant's failure to specify the listing she met or equaled, to set forth evidence supporting a listed impairment, or any functional limitations that would have impacted the ALJ's analysis, as well as on the fact that the

REPORT AND RECOMMENDATION
PAGE -7

01  while the failure to list an impairment as severe at step two may be deemed harmless where

02  associated limitations are considered at step four, *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir.

03  2007), it is not apparent the ALJ did consider any such limitations at steps four or five.   (*See*

04  AR 22-32.)   For these reasons, the Court should reject the assertion of harmless error in

05  relation to Asperger's disorder and direct further consideration of this impairment and Dr.

06  Vath's opinion on remand.

07         2.       Functional limitations:

08         Plaintiff also avers error in the rejection of Dr. Vath's assessment of functional

09  limitations.   Plaintiff fails to demonstrate error in the ALJ's conclusion that Dr. Vath's

10  treatment notes did not provide support for significant mental limitations, or that his opinions

11  were not consistent with plaintiff's volunteer work.   "The ALJ is responsible for resolving

12  conflicts in the medical record[,]" *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1164 (9th Cir.

13  2008), and when evidence reasonably supports either confirming or reversing the ALJ's

14  decision, the Court may not substitute its judgment for that of the ALJ, *Tackett v. Apfel*, 180

15  F.3d 1094, 1098 (9th Cir. 1999).   In this case, the ALJ's interpretation of the evidence can be

16  deemed reasonable.   However, because the ALJ erred in failing to consider Dr. Vath's

17  assessment as related to Asperger's disorder, he should reassess this treating physician's

18  opinions as a whole on remand.   Plaintiff also, as described below, identifies two other

19  significant issues with the ALJ's consideration of Dr. Vath's opinions.

20         First, while pointing to the absence of "a completed evaluation with objective

21  findings[,]" the ALJ ignored Dr. Vath's express reliance on the clinical findings from

22  _____

ALJ did adequately consider the claimant's obesity in assessing the RFC.   *Id*. at 682-84.

REPORT AND RECOMMENDATION
PAGE -8

01 examining physician Dr. Kristoffer Rhoads.  (AR 266 ("Because of the above dysfunction I

02 decided to have neuropsychiatric testing done by Dr. Christopher [sic] Rhoads, PhD[.]  I

03 believe you have copies of this report.   There were several problems found on that testing that

04 go beyond his bipolar disorder.   Most striking has been a persistent memory problem."))   The

05 ALJ, as discussed below, briefly described the findings from Dr. Rhoads, but did not assess any

06 perceived opinions associated with the report.  (*See* AR 23-24.)   While the Commissioner

07 posits that the testing results from Dr. Rhoades were "mostly within the average range[]" (Dkt.

08 14 at 10), the ALJ did not provide such reasoning in relation to Dr. Vath.   *See Bray v. Comm'r*

09 *of SSA*, 554 F.3d 1219, 1225 (9th Cir. 2009) (the Court reviews the ALJ's decision "based on

10 the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that

11 attempt to intuit what the adjudicator may have been thinking.")   The ALJ should address this

12 issue on remand.

13          Second, the ALJ found Dr. Vath's opinions not consistent with the objective findings of

14 examining psychologist Dr. Mary Anderson without either acknowledging that he assigned Dr.

15 Anderson's opinions little weight, and without identifying any particular inconsistent findings

16 within Dr. Anderson's report.   Rather than merely stating his conclusions, the ALJ "must set

17 forth his own interpretations and explain why they, rather than the doctors', are correct."

18 *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Embrey v. Bowen*, 849 F.2d 418,

19 421-22 (9th Cir. 1988)).   The ALJ should, on remand, provide greater explanation as to the

20 inconsistency perceived between Dr. Vath's opinions and Dr. Anderson's findings.

21 B.      Dr. Kristoffer Rhoads

22          Dr. Rhoads conducted a neuropsychological evaluation of plaintiff in October 2008.

REPORT AND RECOMMENDATION
PAGE -9

01  (AR 220-27, 334-40.)   The ALJ addressed the evaluation by Dr. Rhoads in discussing the

02  medical evidence, noting it took place prior to the period at issue, and stating the examiner

03  "noted varied test results regarding memory and concentration[,]" but that "most scores were in

04  the overall average range" and that "[a] later consultative examination produced similar

05  results."   (AR 23-24.)   In a footnote, the ALJ added that "[a]bsent linkage with a particular

06  impairment and demonstrable memory problems, memory complaints cannot be accorded

07  much weight."   (AR 24, cited cases omitted).

08         Plaintiff disputes the ALJ's depiction of the examination results.   Dr. Rhoads noted

09  "variable concentration and attention[]" during testing, and described testing results including

10  "recognition and long-term retrieval [memory] scores . . . below expected levels for individuals,

11  even with severe impairment[,]" verbal memory scores on list learning, short delay and cued

12  recall, long delay and cued recall, and recognition memory indicating severe impairment (less

13  than first percentile), borderline impairment (fifth percentile) in simple auditory attention and

14  working memory, and severe impairment in ability to abstract and utilize feedback from the

15  environment "with a significant tendency to perseverate and inability to learn."   (AR 337-39.)

16  He also noted "a predominant depressive presentation with cognitive dyscontrol, social

17  discomfort, a degree of suspiciousness and a significant amount of alienation[,]" and "a

18  significant tendency and trend toward withdrawal[.]"   (AR 339-40.)

19         Plaintiff argues error in the ALJ's failure to explain the weight assigned to Dr. Rhoads'

20  opinions.   He avers that, in minimizing his memory impairments, the ALJ effectively rejected

21  Dr. Rhoads' opinions without explanation.   He also states that, while seeming to endorse the

22  opinions, the ALJ mischaracterized the evidence as finding average memory and concentration.

REPORT AND RECOMMENDATION
PAGE -10

01 Plaintiff also denies that the limitation to unskilled work involving simple, repetitive tasks

02 adequately accounts for the severe memory impairments identified in Dr. Rhoads' report.  *See*

03 SSR 85-15 (basic mental demands of unskilled work include the ability to "understand, carry

04 out, and remember simple instructions[,] to respond appropriately to supervision, coworkers,

05 and usual work situations[,] and to deal with changes in a routine work setting.")

06       The Commissioner denies that Dr. Rhoads offered a medical opinion.  "Medical

07 opinions are statements from physicians and psychologists or other acceptable medical sources

08 that reflect judgments about the nature and severity of your impairment(s), including your

09 symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your

10 physical or mental restrictions."   20  C.F.R.  §  404.1527(a)(2),  416.927(a)(2).   The

11 Commissioner observes that Dr. Rhoads did not outline any functional limitations.  *See, e.g.,*

12 *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (ALJ not required to

13 provide clear and convincing reasons to reject physician's statement when statement did not

14 assess any limitations).  The Commissioner further maintains that, even if construed as a

15 medical opinion, the RFC accounted for the difficulty with complex visual and verbal

16 information by limiting plaintiff to simple tasks.  Finally, the Commissioner notes that, in a

17 follow-up consultation with plaintiff, Dr. Rhoads recommended plaintiff "utilize strengths in an

18 environment that both engages and provides him with structure[,]" and stated it appeared

19 plaintiff had "found this in his current job[.]"   (AR 219.)

20       While Dr. Rhoads outlined numerous findings on examination, it is not clear the

21 evidence from this physician could be said to constitute a medical opinion.  In any event, as

22 discussed above, the ALJ failed to acknowledge that treating physician Dr. Vath relied on the

REPORT AND RECOMMENDATION
PAGE -11

01   evidence from Dr. Rhoads in formulating his medical opinion.   This omission warrants further

02   consideration of the report from Dr. Rhoads.   In so doing, it should be noted that Dr. Rhoads

03   identified "severe impairments in tests of verbal and visual recall, particularly for complex

04   information and information with an increased executive/frontal demand[,]" as well as a

05   "significant component of depression as well as social discomfort suggesting history of both

06   bipolar disorder as well as possible autism spectrum disorder."   (AR 334.)

07   C.   Dr. Mary Anderson

08         Dr. Anderson performed a consultative examination of plaintiff in August 2009.   (AR

09   229-39.)   The ALJ described the memory and learning testing conducted by Dr. Anderson to

10   reveal scores "all within the overall average range; no scores were lower than 'low-average'

11   and many were 'average.'"   (AR 24.)   He further stated:

12         And although the Trails A test results were indicative of severe impairment, the
         more difficult Trails B results was average.   Additionally, Dr. Anderson's
13         mental status findings reflect less than disabling functional impairment.

14         She found that the claimant was at times defensive and had an intense
         presentation.   He showed some circumstantial thought processes but could be
15         redirected.   He had normal speech, orientation, and grooming.   He was
         cooperative during the interview and his affect was congruent with his stated
16         mood.

17         The claimant showed some problems with recent memory, recalling two of three
         items after a five-minute delay.   However, his immediate and remote memory
18         were intact.   He showed no obvious problems following the conversation
         during the examination.   He correctly counted forward by fours, performed
19         serial threes, spelled 'world' forward and backward, and followed a three-step
         command.   He accurately named Idaho and Oregon as the two states that border
20         Washington.   Dr. Anderson's only diagnoses were affective disorder and
         anxiety disorder.

21

22   (*Id*.)   The ALJ gave "little weight" to the opinions of Dr. Anderson, "who seems to conclude

REPORT AND RECOMMENDATION
PAGE -12

01  that the claimant would have problems in understanding, remembering, and carrying out

02  instructions."   (AR 28, internal citation to record omitted.)   He reasoned:

> However, it is unclear what specific vocational limitations are indicated by Dr.
> Anderson.   Moreover, Dr. Anderson draws the opinion largely from the
> claimant's subjective report; she quotes the claimant to indicate that his
> "understanding is 'not very good'. . ." and that "his social interaction is
> 'terrible.'"   Neither statement is supported by the record.

06  (*Id.*)

07       Plaintiff maintains that, if the ALJ found Dr. Anderson's opinions unclear, he should

08  have recontacted her for clarification.   20 C.F.R. § 404.1519p(b), 416.919p(b) ("If the report is

09  inadequate or incomplete, we will contact the medical source who performed the consultative

10  examination, give an explanation of our evidentiary needs, and ask that the medical source

11  furnish the missing information or prepare a revised report.")   Plaintiff denies Dr. Anderson

12  based her opinions on subjective reporting, noting she conducted a mental status examination

13  and testing, and stated her medical source statement was "[b]ased on the findings of this

14  writer[.]"   (AR 236.)   He notes support for the conclusions in the medical source statement

15  with the findings on examination.   (*See*, *e.g.*, *id.* at AR 233, 236 (opinion that plaintiff's "social

16  interaction is 'terrible[]'" is supported by observation in clinical interview that he presented as

17  "intense[,] . .   defensive and almost angry."), AR 235, 236 (opinion that plaintiff's

18  "understanding is 'not very good'" is supported by psychometric testing indicating plaintiff had

19  "difficulty learning" and "decreased ability to attend to information, to hold and process that

20  information, and to arrive at a response as a result.")   Plaintiff also criticizes the ALJ's

21  rejection of opinion evidence based on reliance on subjective reporting, especially given the

22  nature of mental illness.   *See*, *e.g.*, *Ferrando v. Comm'r of SSA*, No. 10-15771, 2011 U.S. App.

REPORT AND RECOMMENDATION
PAGE -13

01   LEXIS 18526 at *5 n.2 (9th Cir. Sep. 6, 2011) ("[Mental health professionals frequently rely on

02   the combination of their observations and the patient's reports of symptoms (as do all doctors).

03   . . . To allow an ALJ to discredit a mental health professional's opinion solely because it is

04   based to a significant degree on a patient's 'subjective allegations' is to allow an end-run

05   around our rules for evaluating medical opinions for the entire category of psychological

06   disorders.") and *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008) ("[A]n

07   ALJ does not provide clear and convincing reasons for rejecting an examining physician's

08   opinion by questioning the credibility of  the patient's complaints where the doctor does not

09   discredit those complaints and supports his ultimate opinion with his own observations.")

10        The Commissioner avers that the ALJ properly rejected the opinion evidence from Dr.

11   Anderson given the absence of supporting clinical evidence and the reliance on subjective

12   complaints not deemed credible.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

13   *See also Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("An ALJ may reject a

14   treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that

15   have been properly discounted as incredible.") (quoted source omitted).   The Commissioner

16   denies, therefore, that recontacting Dr. Anderson was necessary or appropriate.   She also

17   posits that "though some of the limitations opined by Dr. Anderson were not clear, they were

18   not ambiguous; that is, they did not have two or more meanings."   (Dkt. 14 at 6-7.)

19        The ALJ should reconsider the evidence from Dr. Anderson on remand.   While the

20   testing did reveal some average scores, there were far more scores falling in the "below

21   average" or "low average" range.   (*See* AR 234-38.)   In fact, neither Dr. Beatty, nor Dr.

22   Flanagan, whose opinions the ALJ relied upon, depicted the results as falling in the "overall

REPORT AND RECOMMENDATION
PAGE -14

01  average range."  (*See* AR 256 and 262 ("General memory low average, WMI in the 21st

02  percentile, Trails A 53 sec, Trails B 77 sec."))

03       Also, while the ALJ accurately depicted Dr. Anderson's assessment of functional

04  limitations as unclear and appropriately noted that the medical source statement reflected

05  reliance on plaintiff's reporting (*see* AR 236), the ALJ arguably should have contacted this

06  consulting physician for clarification.  As plaintiff observes, courts have used the terms

07  "unclear" and "ambiguous" interchangeably in discussing the obligation for further inquiry.

08  *See Brewer v. Astrue*, No. 08-16171, 2010 U.S. App. LEXIS 21504 at *2 (9th Cir. Oct. 19,

09  2010) ("[I]f the basis for the VA's finding of disability is unclear, the ALJ's duty to inquire and

10  further develop the record would be triggered.") (citing *Tonapetyan v. Halter*, 242 F.3d 1144,

11  1150 (9th Cir. 2001) ("Ambiguous evidence . . . triggers the ALJ's duty to 'conduct an

12  appropriate inquiry.'") (quoting *Smolen*, 80 F.3d at 1288)).   In addition, the ALJ's conclusion

13  that Dr. Anderson's opinions as to understanding and social interaction were not supported by

14  the record may be implicated by other errors in the ALJ's decision, as outlined above.

15  D.   Drs. Edward Beaty and Rita Flanagan

16       Plaintiff also argues error in the consideration of the opinions of State agency reviewing

17  physicians Drs. Beaty and Flanagan.  These physicians found plaintiff capable of "simple,

18  well-learned, repetitive tasks."  (AR 242, 262.)  While according "significant weight" to their

19  opinions, the ALJ described those opinions as indicating only the ability to perform "simple,

20  repetitive tasks[,]" and did not include the limitation to "well-learned" tasks in the RFC

21  assessment.  (AR 22, 27.)  Plaintiff maintains the ALJ erred in implicitly rejecting this

22  opinion without explanation.  *See Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998)

REPORT AND RECOMMENDATION
PAGE -15

01   ("The Commissioner may reject the opinion of a non-examining physician by reference to

02   specific evidence in the medical record."); SSR 96-8p ("If the RFC assessment conflicts with an

03   opinion from a medical source, the adjudicator must explain why the opinion was not

04   adopted.")

05        The Commissioner argues the ALJ's assessment of limitations need only be consistent,

06   not identical to the assessment of the physicians. *See Turner*, 613 F.3d at 1222-23 (ALJ

07   accounted for marked limitation in social functioning by limiting claimant to "'work in which

08   there is no public contact, and where it is recognized that he works best alone.'")   She also

09   points to the summary conclusions portion of the form completed as supporting the

10   interpretation of these physicians' opinions.   (*See* AR 240.)

11        As observed by plaintiff in reply, the Court considers the narrative portion, not the

12   summary conclusions portion of the form completed by the reviewing physicians.   Program

13   Operations Manual System (POMS) DI 25020.010 at B.1.   Moreover, while the omission of

14   the phrase "well-learned" might not be significant in other circumstances, the phrase is

15   pertinent in this case given the evidence as to memory and learning rejected by the ALJ and the

16   need for further consideration of that evidence.   The ALJ should, therefore, address on remand

17   the full content of the assessed limitations by Drs. Beaty and Flanagan.

18                            <u>Employment Specialist</u>

19        Plaintiff also takes issue with the ALJ's consideration of evidence from employment

20   specialist Steven Lashley.  (AR 370-74.)   The regulations construe the opinions from such

21   "non-medical sources" as "other source" opinions. 20 C.F.R. §§ 404.1514(d)(4), 416.914(d)(4).

22   The ALJ's decision should reflect consideration of such opinions, SSR 06-3p, and the ALJ may

REPORT AND RECOMMENDATION
PAGE -16

01  discount the evidence by providing reasons germane to each source.   *Molina*, 674 F.3d at 1111

02  (citing *Turner*, 613 F.3d at 1224, and *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)).

03        The ALJ considered the evidence from Lashley as follows:

04        I considered the assessment of . . . Lashley, who concluded that the claimant
          could perform clerical and customer service tasks.  The opinion was based on
05        evaluations from supervisors with firsthand knowledge of the claimant's work.
          It is also generally consistent with the objective medical evidence, as discussed
06        above.  While Mr. Lashley references "job carving" and "accommodation",
          these references are somewhat obscure, and would not, in any event, affect
07        simple repetitive work.

08  (AR 28, internal citation to record omitted.)   Plaintiff raises numerous arguments in relation to

09  Lashley.  (*See* Dkt. 12 at 14-16.)

10        For the most part, the ALJ's assessment appears reasonable.   Lashley's report contains

11  a number of statements which could be reasonably construed as supportive of the ALJ's

12  decision, including the conclusion that plaintiff "has shown he is able to perform light clerical

13  and customer service tasks; potentially in a full-time capacity."  (AR 373.)   Lashley also

14  stated:  "Some of his strengths that stood out in his assessment were interpersonal skills,

15  attendance and reliability, and a consistent good quality of work."  (*Id*.)   In addition, while the

16  ALJ did not reasonably deem Lashley's reference to accommodation as obscure – given that

17  Lashley outlined specific accommodations of using a notepad or logistical map and having a

18  written list of tasks/responsibilities provided by the employer (*id*.) – it was not unreasonable for

19  the ALJ to conclude that any such limitations would not be precluded by simple, repetitive

20  work.

21        However, the errors in the assessment of the medical evidence calls into question the

22  ALJ's conclusion that the report from Lashley is generally consistent with the objective

01 medical evidence.   The ALJ also failed to fully account for the content of Lashley's report,

02 including, for example, his observations that plaintiff "experienced difficulty with verbal and

03 working memory, problem solving, working independently, a below average rate of work, and

04 navigating the hospital environment[,]" that he would "benefit from a team environment that

05 promotes interaction and is not deadline driven or fast paced[,]" and that he "may benefit from

06 on the job training in the job placement stage since it takes him longer than average to learn new

07 tasks."   (*Id.*)   For these reasons, the ALJ should also consider the evidence from Lashley on

08 remand.

09 <u>Credibility</u>

10     Absent evidence of malingering, an ALJ must provide clear and convincing reasons to

11 reject a claimant's testimony.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)

12 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).   *See also Vertigan v. Halter*,

13 260 F.3d 1044, 1049 (9th Cir. 2001).   "General findings are insufficient; rather, the ALJ must

14 identify what testimony is not credible and what evidence undermines the claimant's

15 complaints."  *Lester*, 81 F.3d at 834.   "In weighing a claimant's credibility, the ALJ may

16 consider his reputation for truthfulness, inconsistencies either in his testimony or between his

17 testimony and his conduct, his daily activities, his work record, and testimony from physicians

18 and third parties concerning the nature, severity, and effect of the symptoms of which he

19 complains."  *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

20     The ALJ in this case concluded the "overall record" did not support the alleged degree

21 of impairment, pointing, in support, to the results of the examinations conducted by Drs.

22 Rhoads and Anderson, and progress notes from Dr. Vath.   (AR 23-24.)   He found plaintiff's

REPORT AND RECOMMENDATION
PAGE -18

01  activities consistent with the assessed RFC, noting plaintiff's volunteer work in a hospital one

02  day a week and in a nursing home two days a week, and that his "supervisors gave him high

03  marks in most aspects regarding his work performance."  (AR 24-25.)  The ALJ also found

04  plaintiff's educational history consistent with an ability to perform simple work, concluding his

05  ability "to persist for at least half of the school year reflects an ability to perform simple,

06  repetitive tasks."  (AR 25.)  The ALJ similarly found plaintiff's work history "not entirely

07  consistent with the alleged limitations[,]" noting he quit two past jobs, one "at least partly,

08  because they did not pay enough (Testimony of Claimant)."  (*Id*.)  The ALJ also found

09  plaintiff's "presentation at hearing not entirely consistent with his alleged limitations[,]"

10  explaining:  "He was articulate and responded promptly to all my questions.  He also gave a

11  fairly detailed account of his duties from his job at Microsoft, which he left in 2000."  (AR 26.)

12       Plaintiff takes issue with all of the ALJ's reasons for not finding him fully credible.

13  (*See* Dkt. 12 at 21-24.)  As the Commissioner observes, "questions of credibility and

14  resolutions of conflicts in the testimony are functions solely of the [Commissioner]."  *Morgan*

15  *v. Commissioner of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999) (cited sources omitted).  An

16  ALJ may properly consider contradiction with the medical record, *Carmickle*, 533 F.3d at 1161,

17  inconsistencies or contradictions between a claimant's statements and activities of daily living,

18  *Tonapetyan*, 242 F.3d at 1148; *Thomas*, 278 F.3d at 958-59, educational and work history, *see*

19  *generally Smolen*, 80 F.3d at 1284, and his personal observations at hearing, *Marcia v. Sullivan*,

20  900 F.2d 172, 177, n.6 (9th Cir. 1990).

21       While plaintiff proffers a different interpretation of the evidence relating to his

22  activities, educational and work history, and the ALJ's observations at hearing, he fails to

REPORT AND RECOMMENDATION
PAGE -19

01  demonstrate that the ALJ's interpretation of that evidence was not rational.   However,

02  credibility determinations are inescapably linked to conclusions regarding medical evidence.

03  *See* 20 C.F.R. §§ 404.1529, 416.929.   In this case, further consideration of the medical

04  evidence may necessitate further consideration of plaintiff's credibility on remand.   This is

05  particularly true here given that the ALJ explicitly relied on evidence from Dr. Rhoads, Dr.

06  Anderson, and Dr. Vath in finding a lack of support for plaintiff's alleged level of impairment.

07  (*See* AR 23-24.)   Likewise, further consideration of the evidence from Lashley could implicate

08  the ALJ's consideration of that evidence in relation to plaintiff's credibility.   For these reasons,

09  the ALJ should reassess plaintiff's credibility as necessary on remand.

10                                    Lay Witness Testimony

11        Lay witness testimony as to a claimant's symptoms or how an impairment affects ability

12  to work is competent evidence and cannot be disregarded without comment.   *Van Nguyen v.*

13  *Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).   The ALJ can reject the testimony of lay

14  witnesses only upon giving germane reasons.   *Smolen*, 80 F.3d at 1288-89 (finding rejection of

15  testimony of family members because, *inter alia*, they were "'understandably advocates, and

16  biased'" amounted to "wholesale dismissal of the testimony of all the witnesses as a group and

17  therefore [did] not qualify as a reason germane to each individual who testified.") (citing

18  *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)).

19        Plaintiff takes issue with the ALJ's consideration of his parents' testimony.   (*See* AR

20  193-203 and 216.)   The ALJ found "[t]he statements generally reflect the same allegations

21  made by the claimant, allegations that are not entirely credible for the reason discussed above."

22  (AR 28.)   The ALJ also discussed lay testimony generally, noting, *inter alia*, the "primacy of

01 the objective medical evidence in Social Security disability cases[,]" and that an ALJ may

02 discount lay testimony conflicting with the medical evidence.   (AR 28-29.)

03        Most of plaintiff's arguments relating to his parents' testimony lack merit.   As the

04 Commissioner observes, where an ALJ provides germane reasons for rejecting the testimony of

05 one witness, the ALJ need only point to those reasons upon rejecting similar testimony offered

06 by a different witness.   *Molina,* 674 F.3d at 1114 (citing *Valentine v. Comm'r SSA,* 574 F.3d

07 685, 694 (9th Cir. 2009) (because "the ALJ provided clear and convincing reasons for rejecting

08 [the claimant's] own subjective complaints, and because [the lay witness's] testimony was

09 similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the

10 lay witness's] testimony")).

11        However, as stated above, the ALJ may need to reconsider plaintiff's credibility on

12 remand.   Because the ALJ relied on the same reasons for rejecting the statements of plaintiff's

13 parents, the errors discussed above may also require reconsideration of the lay testimony.

14        Also, plaintiff notes the ALJ's failure to address his father Robert Bailey's observations

15 regarding the hand tremors caused by his medications.   (AR 54, 198, 202.)   He notes that,

16 while he minimized the limitations in his own testimony (AR 52), his father testified plaintiff

17 did not have a good sense of his own limitations (AR 53-54), and stated plaintiff's hand tremors

18 affected his ability to perform tasks involving manual dexterity and that, while he could

19 complete such tasks, "they require more determination and a slower pace."   (AR 202.)   This,

20 standing alone, would not likely demonstrate an error on the part of the ALJ, given that the

21 decision to rely on plaintiff's own testimony regarding his hand tremors at hearing can be

22 deemed rational.   (*See* AR 20, 51-52.)   However, because this matter is being remanded for

REPORT AND RECOMMENDATION
PAGE -21

01    other reasons, the ALJ should take the opportunity to consider whether Robert Bailey attested

02    to a symptom not otherwise taken into consideration at steps four or five.

03    <u>Step Five</u>

04    The Medical-Vocational Guidelines or "grids" present a short-hand method for

05    determining the availability and numbers of suitable jobs for claimants, addressing factors

06    relevant to a claimant's ability to work, such as age, education, and work experience.  *See* 20

07    C.F.R. Pt. 404, Subpt. P, App 2.   Their purpose is to streamline the administrative process and

08    encourage uniform treatment of claims.  *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999).

09    An ALJ may rely on the grids to meet his burden at step five.  *Burkhart v. Bowen*, 856

10    F.2d 1335, 1340 (9th Cir. 1988).   "They may be used, however, 'only when the grids

11    accurately and completely describe the claimant's abilities and limitations.'"  *Id.*   (quoting

12    *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985)).

13    The existence of a nonexertional limitation does not automatically preclude application

14    of the grids.  *Desrosiers v. Secretary of Health & Human Servs.*, 846 F.2d 573, 577 (9th Cir.

15    1988.  *See also* SSR 83-14 ("Nonexertional impairments . . . may or may not significantly

16    narrow the range of work a person can do.");  *Razey v. Heckler*, 785 F.2d 1426, 1430 (9th Cir.

17    1986) ("The regulations . . . explicitly provide for the evaluation of claimants asserting both

18    exertional and nonexertional limitations. [20 C.F.R. Pt. 404, Subpt. P, App. 2] at § 200.00(e)."),

19    *modified at* 794 F.2d 1348 (1986).   Instead, the ALJ must determine whether the nonexertional

20    limitations are "'sufficiently severe' so as to significantly limit the range of work permitted by

21    the claimant's exertional limitations[.]"  *Burkhart*, 856 F.2d at 1340 (quoting *Desrosiers*, 846

22    F.2d at 577).   If so, the grids are inapplicable and the testimony of a vocational expert (VE) is

REPORT AND RECOMMENDATION
PAGE -22

01    required.  *Id.*

02          The ALJ in this case concluded plaintiff's nonexertional limitations would not have a

03    significant impact on his ability to perform unskilled work, pointing to, *inter alia*, the Ninth

04    Circuit's decision in *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007), and SSR 85-15.

05    (AR 30-32.)  He, therefore, deemed a finding of "not disabled" appropriate under the grids.

06    (*Id.*)

07          The ALJ assessed plaintiff as able to "perform simple, repetitive tasks[,]" "capable of

08    basic, work-related social interaction with supervisors, co-workers, and the public[,]" and able

09    to "adjust to simple variations in routine, avoid hazards, travel to and from the workplace, and

10    carry out goals and plans set by others."  (AR 22.)  However, as discussed below and as based

11    on this Court's prior interpretation of this issue, neither SSR 85-15, nor *Hoopai* justify the

12    ALJ's sole reliance on the grids in light of the nonexertional limitations assessed.

13          SSR 85-15 reflects that basic mental demands of unskilled work include the ability to

14    "understand, carry out, and remember simple instructions[,] to respond appropriately to

15    supervision, coworkers, and usual work situations[,] and to deal with changes in a routine work

16    setting."  SSR 85-15.  The ruling further states that "[a] substantial loss of ability to meet any

17    of these basic work-related activities would severely limit the potential occupational base."  *Id*.

18    While SSR 85-15 could be said to account for the RFC assessment in part, it does not

19    necessarily account for the totality of the RFC assessment.  For example, the ALJ found

20    plaintiff could perform simple, *repetitive* tasks, could adjust to *simple* variations in routine, and

21    could carry out goals and plans set by others.  There also remains a question as to whether the

22    ALJ would adopt a limitation to well-learned tasks, as assessed by Drs. Beaty and Flanagan,

01   and/or a hand tremor symptom.

02         The case law relied upon by the ALJ is likewise distinguishable.   In *Hoopai*, the Ninth

03   Circuit rejected the argument that a step two severity finding for depression necessitated

04   vocational expert testimony at step five, and declined to find "the evidence of mild or moderate

05   depression to be a sufficiently severe non-exertional limitation that significantly limit[ed] [the]

06   claimant's ability to do work beyond the exertional limitation."   *Hoopai*, 499 F.3d at 1074-76.

07   Here, the ALJ not only found plaintiff's affective disorder and anxiety disorder severe, he also,

08   unlike in *Hoopai*, assessed several resulting nonexertional limitations.   Also, while the ALJ

09   cites to other case law finding application of the grids appropriate in various circumstances,

10   none of the case law cited reflects the existence of the precise limitations at issue here, or their

11   cumulative effect.   *See*, *e.g.*, *Cowen v. Comm'r of Soc. Sec.*, No. 08-17641, 2010 U.S. App.

12   LEXIS 21804 at * 4 (9th Cir. October 22, 2010) (upholding ALJ's reliance on the grids based

13   on conclusion claimant's "capacity for medium work was not significantly diminished by her

14   nonexertional (mental) limitations of limited public contact and unskilled entry-level work.")

15         As argued by plaintiff, the ALJ failed to provide sufficient support for his conclusion

16   that the limitations assessed would not restrict the unskilled occupational base.   *See*, *e.g.*,

17   *Polny v. Bowen*, 864 F.2d 661, 663-64 (9th Cir. 1998) (where ALJ found a claimant "capable of

18   performing a wide range of jobs that were not highly stressful, did not require comprehension

19   of complex instructions, and did not require dealing with the public[,]" the claimant's

20   "nonexertional limitations are in themselves enough to limit his range of work, the grids do not

21   apply, and the testimony of a vocational expert is required to identify specific jobs within the

22   claimant's abilities.")   Instead, as previously found by this Court in similar circumstances, the

REPORT AND RECOMMENDATION
PAGE -24

01  ALJ appeared to speculate about the base of unskilled work without adequate support from case

02  law or evidence from the record, and ventured into the realm of VE testimony in reaching his

03  step five conclusion.   *See*, *e.g.*, *Bennett v. Astrue*, C12-836-JCC-JPD, 2013 U.S. Dist. LEXIS

04  17559 at *25-33 (W.D. Wash. Jan. 18, 2013) (ALJ erred in relying solely on grids where RFC

05  assessment included restrictions to limited public contact, one-to-three step instructions, simple

06  work-related decisions, and a predictable work setting), *adopted by* 2013 U.S. Dist. LEXIS

07  17555 (W.D. Wash. Feb. 8, 2013); *Galinski v. Astrue*, No. C11-516-RSL-JPD, 2011 U.S. Dist.

08  LEXIS 151424 at *46-47 (W.D. Wash. Dec. 16, 2011) (ALJ erred in relying solely on grids

09  where RFC assessment found plaintiff "'should avoid working with the general public, but he

10  can work with a supervisor and a few coworkers ... [and] [h]e would do best with a predictable

11  work routine.'"), *adopted by* 2012 U.S. Dist. LEXIS 4470 (W.D. Wash. Jan. 12, 2012); *Cox v.*

12  *Astrue*, C10-5021-RBL, 2010 U.S. Dist. LEXIS 81134 at *27-29 (W.D. Wash. Jul. 9, 2010)

13  (ALJ erred in relying solely on grids where RFC limited plaintiff to performing only simple

14  routine work with limited social contact), *adopted by* 2010 U.S. Dist. LEXIS 81131 (W.D.

15  Wash. Aug. 7, 2010).

16         In sum, the ALJ's decision lacks substantial evidence support for the conclusion that the

17  grids completely and accurately account for the assessed limitations.   Because the ALJ

18  improperly relied solely on the grids in reaching his step five conclusion, this matter should be

19  remanded for further evaluation at step five, with the assistance of a VE.

20                                           Remand

21         The Court has discretion to remand for further proceedings or to award benefits.   *See*

22  *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).   The Court may direct an award of

REPORT AND RECOMMENDATION
PAGE -25

01  benefits where "the record has been fully developed and further administrative proceedings

02  would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir.

03  2002).

04      Such a circumstance arises when: (1) the ALJ has failed to provide legally
        sufficient reasons for rejecting the claimant's evidence; (2) there are no

05      outstanding issues that must be resolved before a determination of disability can
        be made; and (3) it is clear from the record that the ALJ would be required to

06      find the claimant disabled if he considered the claimant's evidence.

07  *Id.* at 1076-77.

08      Plaintiff argues in favor of a remand for an award of benefits.   However, while plaintiff

09  succeeds in establishing errors, it is not apparent either that no outstanding issues remain to be

10  resolved, or that it is clear from the record that the ALJ would be required to find plaintiff

11  disabled if he properly considered plaintiff's evidence.   Among other issues, for example, it

12  remains to be seen what testimony might be offered by a vocational expert.

13                                    **CONCLUSION**

14      For the reasons set forth above, this matter should be REMANDED for further

15  administrative proceedings.   A proposed order accompanies this Report and Recommendation.

16      DATED this <u>22nd</u> day of April, 2013.

17

18                                        _____
                                          Mary Alice Theiler

19                                        United States Magistrate Judge

20

21

22

REPORT AND RECOMMENDATION
PAGE -26